to the final argument on the calendar for today. That's Vincent v. Annucci. Make sure council are on the line for the appellant. Yes, I'm here. I can hear you. Good morning, your honor. And for the appellee, John gets again. Good morning, your honor. Okay, great. So Mr. Ginsburg, you've got 10 minutes, but two minutes you've reserved for rebuttal. So you may proceed for the next eight. May it please the court. This court said in Betances that Annucci would have satisfied his obligation, which was to make an objectively reasonable effort to comply with early, close quote, by notifying the relevant district attorneys and sentencing judges of the need for resentencing in a prompt manner. We concede that Annucci failed to do that, putting aside the arguments that we've raised for purposes of preservation, we concede liability. But there is no evidence in this record and the summary judgment record where the issue was decided that Annucci's failure along the lines I just mentioned, prolonged this particular plaintiff's incarceration. It follows that Annucci is entitled to summary judgment, limiting the extent of his damages only. So how would somebody like Vincent prove that he would have stayed in jail longer? What would that hearing look like? What would the evidence look like? Well, I think Vincent would have a particularly difficult time for a number of reasons. Number one, his sentencing judge was within the jurisdiction of the fourth department, the intermediate appellate division in the state of New York, and promptly following early in the immediate wake of early, the fourth department had not yet embraced early. The fourth department had still held that quote, there was no need for the court to specify a period of PRS sentencing and trial courts within the fourth department at that time still overwhelmingly declined to disturb unpronounced PRS. I suppose if a plaintiff like Vincent could show somehow that his actual sentencing judge, he could ask for the assistance of his sentencing judge, try to subpoena the judge and get the judge to testify that had this happened earlier, had this notification come more promptly, I would have excised your PRS. And as you wanted me to do, then certainly, a plaintiff like Vincent could carry his burden. But I think it really bears. I just want to make sure that I've heard you correctly. So you're saying that for these cases, and the ones that are that are going forward, judges ought to be expecting that they're going to be subpoenaed, and they're going to give testimony, maybe be deposed, about what they would have done had Annucci done what he was supposed to do? No, I'm not saying that quite as broadly, Your Honor. And thank you for the opportunity to clarify. The issue is, in some sense, really peculiar to Mr. Vincent and folks similarly situated to him, because he was sentenced by a judge under the appellate authority of the fourth department. The other three appellate divisions in the state of New York embraced early, much earlier. And so those courts, I think the second department was the earliest adopter, if you will, those courts would have been, would have recognized that the sentence was indeed illegal, and almost surely would have held a re-sentence. So in those cases, really outside of the fourth department, I think that this presents a much different case. And even if, to the extent that judges are going to be subpoenaed to discuss what their practices were at the time, I mean, first, it's not an uncommon occurrence that decision makers, including legal decision makers, administrative decision makers, and yes, sometimes judges are called to testify as to what they would have done under certain circumstances, but we think it would probably be enough. Again, it's not this case, it would probably be enough for an individual sentencing judge to discuss his or her practices at that time. The judge wouldn't need to necessarily opine offender by offender. And that's why I think the record in the present case is so strong and, you know, it's played this burden of proof. And the district court accurately said that the summary judgment record in this case allows only, quote, baseless speculation as to what the outcome of a prompt referral would have been. And when the plaintiff has the burden of proving something, a finding of baseless speculation shows that he was not able to put forth any evidence from which a reasonable jury could have carried that burden. And I think the inference is even further strong. What do we make of the fact that the fourth department was sort of the outlier department in terms of recognizing early and accepting early's ruling? And therefore, if you're in that department and you're in a person in Vincent's position, you're disadvantaged by the fact that they were not following early. There's a sort of a general sort of disconnect here about, you know, the appropriateness of this analysis, it seems to me. Well, Your Honor, I certainly don't think there's a disconnect. I mean, this is a causation inquiry. So necessarily we have to ask what would have happened counterfactually had the thing that this court in Patansis said Annucci could have done to have discharged his constitutional obligation actually happened? What would have happened if we can sort of reverse engineer those events? And in doing so, the conditions on the ground within the fourth department where Mr. Vincent had been sentenced show that unpronounced PRS was not a constitutional or even a statutory problem. It was not viewed that way the New York State courts in the fourth department at that time. But I think there's even more evidence in this record about this particular plaintiff. I mean, think about what actually happened when the referral came. The referral came belatedly. Again, we can see that in June 2008. By that time, the fourth department and the New York Court of Appeals had rejected unpronounced PRS. They had aligned themselves with Early. So by that time, plaintiff's sentence was illegal under all precedent by which the judge was bound and by which the judge could have referred to all relevant precedent. And yet still, the judge did not hold a resentencing. So a fortiori, when the conditions were much, much less favorable to Mr. Vincent in the immediate wake of Early, no reasonable jury could find that a resentencing would have been held. And so we think that, frankly, even if it were the defendant's burden, as the plaintiffs and amici suggest, there might be some burden shifting. We dispute that in our brief and I'd be happy to go into that. But even if it was defendant's burden on this causation issue, we think we carry that. And there's at least enough to raise an issue of fact. It's simply, and the bottom line is, there's simply no evidence in this record that shows that had Annucci done what he should have done and what caused him liability in this case, that as to this particular plaintiff, that prompt notification would have made a difference. And unless there are further questions, I'll reserve the remainder of my time. I just have one question. There are about 650 individuals in this category. Is that correct? I think it might even be more. Are you referring to the Betances class action, Your Honor? We're referring generally to the classification of people who were never resentenced and were subjected to the PRS unlawfully. Oh, I think it might even be more than that, Your Honor, but certainly at least that. And the primary problem for recovering damages, it would, for them, is the most difficult situation from the plaintiff's perspective is to be in the fourth department. I think that's right. I think someone in the fourth department could still possibly overcome that, again, that very strong evidence, if he would have done what the plaintiff in this case did not do and asked the judge, subpoenaed the judge, and asked what the judge would have done. The plaintiff had every ability to do that in the letter that the judge ultimately wrote the plaintiff in response to Annucci's letter. The judge said, I hope this letter, which confirmed what he did or failed to do at the time of sentencing, the judge said, I hope this letter helps you in your efforts. It really seems like if there were ever a sentencing judge favorably inclined to offer that sort of testimony and to cooperate with that sort of subpoena, it would be this judge. But the plaintiff did not attempt to extract any testimony or really present any evidence that things would have happened differently had this referral come promptly. Correct me if I'm wrong. Leaving aside the referral, leaving aside Annucci's tardiness, if a sentence imposed is, if a person is incarcerated, not pursuant to law but pursuant to a violation of law, as was the case here and as was found in the first early decision where the decision was that the sentence insofar as it dealt with PRS was a velity, why isn't the approach taken by the district court here perfectly appropriate? We're going to figure out what the damages would be appropriately for a person who's held improperly in jail. And given with a nod or a bow in favor of the sentencing option by reducing the number of days by 90 days, what's wrong with that approach if the violation that's critical is the original sentence, the original imposition of the PRS by the administratively and not what Annucci did afterwards? Your Honor, if the premise you sort of ended with at the end of your question, that if, if that were true, I would agree with you. But that's really where the disconnect is here. This court in all the way back in the first Vincent case said that Annucci's liability for the events at issue, the theory of Annucci's liability is for deliberate indifference as to his reaction too early. And so really, in some sense, the question of Annucci's substantive constitutional obligation is really coextensive with qualified immunity in the sense that had he taken reasonable steps, as opposed to the unreasonably delayed steps that this court found, he not only would have been entitled to qualified immunity, but would have discharged his underlying constitutional duty. And it's that conduct by Annucci, that failure, the deliberate indifference, not the recording of PRS in the first instance, from which any harm that's to the original, as this court has said, characterized that the administrative imposition of PRS, that would really nullify the Vincent court's finding of qualified immunity for the events that came before early, insofar as in this case, Mr. Vincent's PRS was imposed pre-early. And Annucci was and is the beneficiary of qualified immunity for those events. So the conduct at issue here, on which the causation inquiry centers, is the failure to take those objectively reasonable steps once early came down, namely the failure to undertake this resentencing initiative promptly. And as I've been discussing with your honors, and I'll reserve whatever Judge there's no evidence showing that a prompt referral would have made a difference. Can I just ask one question here? I mean, the remedy that we explained in early was that Annucci and department officials had to do either, either move for a resentencing, right? Or to basically excise the PSR, say, okay, there is no PSR for you, right? Is that correct? Early did say that. Yes. Okay. But then there's, there's another line that says, and facilitate the release of inmates who are re-incarcerated after violations of an administratively imposed PSR, a PRS. So in other words, you've got people who are on supervision, who are now in a situation where either they're going to get, their supervision is going to be ended, or they're going to get resentenced. And the judge can say, yeah, we're going to continue supervision, but for the people who have been improperly put on supervision in the interim, have violated the conditions of that supervision and are now in jail. Is your view that early allows that problem to be fixed by going to just a simple, simple resentencing for the initial violation, the initial crime? Well, the answer is yes, but in explaining that, let me clarify my answer to your question. Early did say that the state could have pursued both of the, either of those two alternatives. Although as I think subsequent decisions along these, this line of cases made clear that reference to the state in early was really the state writ large, and it's only the sentencing judges and the DAs who actually have the ultimate authority to initiate and ultimately order a resentencing. And as this court has recognized impotences, Annucci would have satisfied his obligation had he promptly notified the DAs and judges, even if that notification wouldn't have made a difference. And frankly, your honor, the folks in the description that you gave, people who were reincarcerated after early based upon PRS violations imposed after early, like Mr. Vincent, that represents the three lead plaintiffs in the Betances class as well. Those folks all were reincarcerated based upon PRS violations incurred and PRS terms enforced after early. So I think I would end my opening presentation where I started, and that this court really dealt with this issue in Betances. We are asking the court to, we appreciate Betances, we take Betances at its word, and following Betances in terms of what Annucci was required to do, our position here is that as to Mr. Vincent, had Annucci done that, there's simply no evidence that it would have made a difference. All right, well, you've got time on rebuttal. We'll now hear from Mr. Goetz. Good morning, your honor, and may it please the court. My name is John Goetz and I represent Mr. Vincent in this matter. And your honors, I have to admit that I feel a bit foolish today discussing with this court or telling this court what this court has been ruling on with regards to early Murray some 15 years ago. The reality is, your honor, that I think Judge Sullivan and Judge Walker, you hit the point. This isn't about what could have happened or the speculation involving what would have happened with the state courts. It's what happened in Mr. Vincent's matter as it relates to this defendant. This defendant repeatedly failed to follow this court's repeatedly. This wasn't this was this was willful and is pointed out in the book. Look, this is there's no question of liability that's been conceded. So the issue is damages, right? Yes, your burden is on you or your client to prove damages, correct? Yes, your honor. And so I guess the argument is that had Vincent done what he was supposed to, excuse me, had Annucci done what he was supposed to do, he would have gotten your client in front of a judge lickety-split, right? That's what they're saying, your honor. Okay. And so the, I guess then the point is, had that happened, it hasn't been proven that your client would have been released, that that would have been up to the judge. And so I think that's really the focus. And thank you. I'm sorry. No, I'm sorry. Go ahead. Thank you, your honor. With regards that I think that the district court laid out in its decisions, if you go back to 418, for example, that the speculation is really based upon the speculation is being raised by the defendant, not by plaintiff. We're dealing with what did in fact happen or did not happen by Mr. Annucci. Therefore, what we have is a situation in which it's clear. And I would suggest that there's Supreme Court cases, Zimmerman v. Birch, for example, that talks about this holding. And Mr. Annucci, because of his actions, held my client, held Mr. Vincent. The fact of the matter is, is that as soon as early two came out, we have a legal nullity. It's Mr. Vincent, there's nowhere in the state's papers, it says that Mr. Vincent was unlawfully sentenced in the beginning. What this court held was that his due process violation occurred after the conviction and sentence. So if you look at what's occurring here, not just with what this district court says, and I would suggest to this court that other district courts that have handled these on these issues, which is to say, yes, there is causation. Why? Because what Mr. Annucci did not do, this is confusing. I would suggest that my friend, my colleague is attempting to confuse the issue of what could or could not have happened with the courts, with the state courts. That's not what this is about. This is about the mandate of this particular court as it relates to this state and this state act or then disregarding this court's mandate over and over again for years. And I think in the, I'll call it the Betances 2 case, if you'll bear with me, I think that this court went out of its way to show all of those problems. So I think it's, and I would suggest by the way, it's a bit disingenuous to say that the petition, that plaintiffs would have to bring in the judges as to what he or she were ordering. We have a record, we have a record in this particular case showing that he was not sentenced to post release supervision. Here's the problem, at least as I see it, is that the judge said what might have happened if Vincent had been promptly referred for that? The mystery goes against the party that has the burden of proving damages, doesn't it? Well, no, your honor, and here's why. The plaintiff did not know, none of these plaintiffs would need to bring in the court as to what happened in the first place about this resentencing. That has nothing to do with what Mr. Annucci did or did not do or what docs did or did not do. That's really, I would suggest to this court that it's a red herring. And the reason is, we have a lawful order that was in place at the sentencing of these individuals. And then, I'm sorry, I'm having a, can the court see me? Yes. Okay. And then what happens is Mr. Annucci fails to abide by that. And to say that somehow the actions of courts subsequent to Mr. Annucci's to abide by that mandate would create a causation issue. I would say it's just not proper. It's just not right. And that's what I would suggest to this court, what the district court was saying in its decision. And I would suggest to this court that that's what the other courts that have been handling these matters have been saying in their decisions following this court. I think you're mischaracterizing what the cases are about here. I mean, basically, Annucci is liable for not redressing the problems of the PRSs after early. That's the violation. It's not that he was imposing supervision unlawfully. It's that he didn't redress the problem after early, correct? No, your honor. I would suggest that I stand by the proposition that what happened initially was this court held that the post-release supervision that was being administratively imposed was illegal. The court had rendered a lawful decision around a lawful judgment, excuse me, as it relates to Mr. Vincent. It was a determinant term with no post-release supervision. And I would suggest to this court that that's why we're here. There was never a legal mandate for Mr. Annucci or other defendants at the time to say, well, we're just going to hold these people and try a different jurisdiction. And that's really what I would suggest to this court what was going on by Mr. Annucci. Don't you actually have a little bit of a stronger argument in one sense? DOCS is responsible, presumably, and the Bureau of Prisons, I suppose, for holding people. And if they know that a person is being held unconstitutionally because there is no legal justification for it, they can release them. Yes, your honor. Thank you. The fallback is that the way that you don't have to release the person is get them sentenced. But if you can't get them resentenced, then because you're holding a person who is being held unconstitutionally at that point, why wouldn't you release them just as would be the case where the person gets a warrant to hold a person and then realizes that the warrant is a fake, is told that it's a fake. And then you're doing something. You have no right to hold this person anymore. That's exactly it, your honor. And that's why I went to the beginning of why I felt a bit foolish. This court, you said it far better than I could. There it is. That is the if you distill this down, that's what happened. And because of those reasons, I'm sorry, your honor. Well, no, I just I'm curious to know, just as between docs and the Bureau of Prisons, who has the power to release an inmate? I mean, that it's up to the prison authorities, presumably, and I guess it's docs to make sure that everybody is lawfully in prison. That that is correct, your honor. It would be docs. It would be the Department of Corrections and Mr. Anucci made clear that he would that that did not happen. Okay, I guess I'm still puzzled. It seems to me that what we said in Vincent versus Yellich is that early established that the administratively imposed PRS is unlawful, that Anucci is not set it not shielded by qualified immunity for failing to redress those violations after early early on notice that he's got to fix it. And so his obligation is to bring the department into compliance with early no later than the day on which we denied rehearing in early. So this is about what he did after early, right? After early, he's supposed to get these folks back in front of a judge, right? Not just that, your honor, he could be at that point you have, again, it's a there, the court, I would suggest has ruled that this was this was an illegal sentence that so what's happening is there's an administrative imposition of that sentence, which is unlawful. And as the as has been conceded, so then we get to the next step of if going back to what Judge Walker was saying, once that happens, it's not about what the court may or may not have done at the local level. It has to do with what are the actions of in this case, Mr. Nucci, he's the remedy for the violation, the remedy for this illegal PRS is that the officials have to go to the New York State Cape for New York State Court for a judicial modification of the sentence. No, no, your honor, that this the court had the options of or excuse me, that missed, they could have, frankly, Mr. Nucci could have had these individuals released, which is what should we would suggest, which is what should have happened. Then you have the next step, which is having the court have the opportunity to resentence that individual or not, it would so it would be in the jurisdiction or the authority of a court to determine whether or not an individual would receive the post release supervision. Or in this case, you could have less time, there's so many ways to address what the possibilities are that I don't want to to steer this court wrongly. One question I have and I tossed this out and I would ask the other side. You mentioned and I think Judge Sullivan also mentioned that the idea here was to bring the state into compliance with early and early had two, two ways in which that could be done. The person could either be released or the person could be reset. They were going to, I think early permitted the state to hold the person. If he was going to be resentenced, you could hold the person until the resets it because that would in effect ratify what had happened. It would make it would correct the problem. You'd have a judge imposed sentence. Correct. He doesn't do that. If he doesn't do that, then isn't the way you bring yourself into compliance with early to release? Yes, Your Honor. That that is exactly the point. Yes. There's no other way to say it. But you that is correct, Your Honor. And unless there are I am past my time. If there are questions, I'm happy to address them. Otherwise, I will relinquish the mic. All right. Thank you very much, Mr. Getz. Thank you. You have two minutes of rebuttal. A few points on rebuttal. Judge Walker early did outline the state's obligations, the state writ large, and it did outline those two alternatives. But this court in Patances said that a new chief would have satisfied his obligation had he made that prop notification, quote, even if the DA's and the judges ultimately rejected compliance, even if he did nothing else. And there was a chance this likewise stated that a new chief's obligation, Dox's obligation writ large, really was to, quote, attempt to cease. Yes, if you're going to be if you're if you're going to resentencing route, if you can get a resentencing, you have a period of time to get your resentencing. And if you can't get the resentencing, you're holding a person unconstitutionally, aren't you? If you're a Dox. And you might be liable for something else. But this court said that if you make that it had a new chief made the resentencing referral promptly and had nothing happened in this court's words in Patances had the DA's and judges, quote, rejected compliance. Still, the defendants would have satisfied their obligation, which was to make an objectively reasonable effort to comply with early. And there's a good reason why this court in Patances did not require. And as far as I read, Patances did not expect that a new chief, either in the first instance or after a referral that didn't have the desired effect, would have simply unilaterally stopped enforcing unpronounced PRS. This was not as we explained. Actually, I think the best place to find it is the new chief's reply brief in. I don't understand that part. I don't understand how you can stop enforcing PRS when it's it's a melody. It's illegal. It's beyond it's not it's not part of his sentence. It was not your honor. It's not. And this court has never held to the contrary. It was not a new cheese role in the system to unilaterally stop enforcing the PRS that he understood sentencing judges to have included and under New York state law were required to include as part of the sentence. In fact, under New York state law, he was prevented from doing so prior to the enactment of Section 601 D. New York State Court of Appeals held that judicial resentencing in that situation is, quote, the sole remedy. It was no more a new chief's place to stop enforcing PRS he thought violated early than to stop enforcing convictions he thought violated Miranda. A new chief is not what was not he was obligated to act following early, but he was not obligated to cease unilaterally cease enforcing administrative PRS then and there. It is true that this court in Vincent referred to the cessation of administrative PRS as, quote, an alternative. But that was only in the sense that it was a way if a new chief found a way to do it that would have satisfied his constitutional obligation. The court in Vincent did not hold that a new chief could have or should have actually done that. And Vincent had no occasion to do that. The only question there, the first Vincent case was regarding the clarity of the law of unpronounced PRS. Now that we're on summary judgment and when once this court got the summary judgment in and the issues of a new chief's authority or lack thereof were more fleshed out, this court stopped short in the chances of obligating a new chief to unilaterally cease administratively imposed PRS. Again, as this court put it in Kansas, his obligation was to, quote, attempt to cease it. And that obligation, again, would have been satisfied by promptly notifying the relevant DAs and the judges. Again, we concede he did not do that. He didn't satisfy his obligation. So I want to ask about that, OK? I mean, so I think what you're saying is that Vincent has not proven compensatory damages because he can't show that it would have been released if a new chief had done what he was supposed to do. That's right. We're saying he hasn't raised a tribal issue. It's his burden and he hasn't raised a tribal issue. That's right. All right. So you're then saying that the damages should be nominal damages of a dollar. That's correct. And then what is so what is a court to do if there's a finding that a new chief or someone like a new chief is willfully defiant of this obligation and they think to themselves, well, I'm only going to be the liability will be a dollar because it's going to be so hard to prove what the judge would have done anyway. Is there some way to deter that kind of bad faith? Your Honor, can you repeat the last? I think you cut out at least some way to deter that kind of bad faith, that willful defiance of of early. Well, I think what would defer I think what would deter that kind of that kind of bad faith is the prospect of a potentious like class action and the prospect that, you know, as Judge Walker and I were discussing on my opening, that sort of. But for the fact that Vincent was in the fourth department, the summary judgment record could look a lot different. And there might be the plaintiff might have a case for compensatory damages. And of course, in the appropriate case, plaintiffs can seek punitive damages as well. The issue that's being teed up for this court, though, is whether this plaintiff satisfied his burden to at least raise a tribal issue. And again, plaintiff in his colloquy and plans counsel is colloquy with your honors in his portion of the argument conceded that it was his burden. The question is whether he raised any of it, whether he proffered any evidence from which a jury could have found that burden to be satisfied. And as as I've explained, and as you thoroughly ventilated with my friend on the other side, he hasn't. And I want to close by making clear in addition to what we're asking for, which I've spent the bulk of my argument talking about, I really want to make clear what we're not asking for. We are not asking for the court to overrule the chances. We're not asking for the court to prejudge damages available to members of the chances class or to anyone else. In this type of situation, we are asking for the court to follow the chances really follow it to the letter, as we've tried to do in sketching out our argument in our briefs and apply the chances to the summary judgment record in this particular case and hold that this particular plaintiff is limited to nominal damages because there is no evidence that prompt notification to this particular plaintiff's DA or sentencing judge would have expedited his release. All right, but I think your your point is that if a judge concludes that what might have happened if Vincent had been promptly referred for resentencing will forever remain a mystery. If that's the finding, that's a win for Anucci on compensatory. That's what you're saying, right? Yes, mystery plus plaintiff's burden equals summary judgment for the defendant. That's right. I have one question. Did Anucci's letter to the released without PSR PRS? I'm not sure whether it said that, your honor. I'd be happy to check the record. I just don't have that at my fingertips, but I know that such a sentence, at least prior to the enactment of Correction Law 601 D, which was on June 30th of 2008 and the letter came June 1st of 2008, such a sentence would have been illegal under New York law. And in all events, the question in this case is what would have happened? What would a resentencing, if anything, have looked like promptly after early? So late 2006, maybe even into 2007, depending upon what you define as promptly. And there at that point, Section 601 D, Correctional Law 601 D and the possibility of a no PRS resentence was not even a glint in any lawmaker's eye. It simply would not have been an option. And that I think is one more reason to suggest that plaintiff's sentence here, had he gone for resentencing promptly after early, would not have been disturbed. Is a copy of the Anucci letter in the record? It is in the record, your honor. Tell us where. Uh, it is. 3 57. 3 57 of the appendix, your honor. Thank you. All right. Well, if there are no other questions, then we will conclude for the day. Thank you both. We will reserve decision on this case. We have two other cases on submission, but that concludes our argument calendar. Before we adjourn, I want to thank Miss Rodriguez. For running court so smoothly. I want to thank the technical folks who managed to make this go off without a glitch. It's kind of amazing that we're able to do this in the midst of a pandemic and a snowstorm. Um, so it worked very well with no masks. So, uh, Rodriguez, would you please adjourn court? Thank you, your honor. Court stands adjourned. Thank you, judges. I'll transfer you now. Thank you. Thank you.